## (June 8, 1971)

■ AVISUN CORPORATION, Appellant, v. MERCER MOTOR FREIGHT, INC., Defendant-Respondent and Third-Party Plaintiff. M. KOENIG & SONS, INC., Third-Party Defendant.— Order of Appellate Term, First Judicial Department, entered August 20, 1970, reversing (2-1) a judgment of the Civil Court for the plaintiff in the amount of $3,116.41, entered October 28, 1969 after a jury trial, and dismissing the complaint, affirmed. Respondent shall recover of appellant $50 costs and disbursements of this appeal. Plaintiff-appellant delivered for processing to the Brooklyn plant of the third-party defendant, M. Koenig & Sons, Inc., a quantity of plastic scrap, some 28,000 pounds of polypropylene resin, for cleaning and making into pellets. The third-party defendant was instructed to ship the goods via defendant-respondent trucking service to the Brooklyn pier for a designated vessel. On Friday at the close of business hours, defendant's tractor-trailer arrived at Koenig's plant, but the driver declined to have Koenig load the trailer for immediate transportation. The trailer was left in the public street in front of the plant, and the driver drove the tractor away to return for a pick-up at 8:00 A.M. on Monday, in order to meet the vessel's sailing deadline. The trailer was to be loaded during the weekend, and this was done by M. Koenig & Sons, Inc., which then locked the trailer. When the defendant's tractor appeared to pick up the trailer on Monday morning, both trailer and goods were missing and presumed stolen, and they have not been recovered. The trial court charged the jury that the delivery and loading of the merchandise on the defendant's trailer constituted

a bailment and left to them the question as to whether the defendant-respondent motor carrier acted reasonably and prudently under the circumstances. They brought in a verdict for the plaintiff, and the trial court dismissed the third-party complaint by the motor carrier against Koenig. There is no appeal from the determination with respect to the third-party complaint. The only question we find it necessary to consider is whether on the facts set forth there was an acceptance of a bailment by the defendant-respondent motor carrier. The dissenting Judge at the Appellate Term would have remanded the case to the trial court for a new trial and for a submission to the jury of the question of whether there was constructive acceptance of the goods by the defendant motor carrier. We herewith determine that until the acceptance of the goods by the defendant carrier, there was no bailment. Making available to the plaintiff's agent Koenig a vehicle for the possible temporary storage of goods by Koenig, was not an acceptance. As the majority opinion in the Appellate Term holds, for a bailment the plaintiff's goods would have to be "placed in a position to be cared for, and under the control of the carrier or his agent, with his knowledge and consent." (*London & Lancashire Fire Ins. Co. v. Rome, Watertown & Ogdensburg R. R. Co.*, 144 N. Y. 200, 205.) Concur — McGivern, Markewich and Kupferman, JJ.; Steuer and Macken, JJ., dissent in the following memorandum: We dissent and vote to reverse the order of the Appellate Term and reinstate the judgment of the Civil Court. We conclude that a bailment was established as a matter of law and that the verdict following a proper charge is supported by the evidence. In our view *London & Lancashire Fire Ins. Co. v. Rome, Watertown & Ogdensburg R. R. Co.* (144 N. Y. 200, 205–207) cited by the majority, affords clear authority for this position. There the court said: "The liability of a railroad company as common carrier of goods delivered to it attaches only when the duty of immediate transportation arises. So long as the shipment is delayed for further orders as to destination of the goods, or for the convenience of the owners, the liability of the company is that of warehousemen. The liability of a common carrier for goods received by him begins as soon as they are delivered to him, his agents or servants, at the place appointed or provided for their reception when they are in a fit and proper condition and ready for immediate transportation. * * * The entire weight of the responsibility rigorously imposed by law upon a common carrier falls upon him contemporaneously (*eo instanti*) with a complete delivery of the goods to be forwarded, if accepted, with or without a special agreement as to reward; for the obligation to carry safely on delivery carries with it a promise to keep safely before the goods are put *in itinere*." When the truck came to Koenig late Friday afternoon Koenig offered to then load it but the driver declined, leaving the trailer on a public street and saying he would pick it up Monday. The majority correctly finds that it was assumed that the tractor would be loaded over the weekend. The so loading with Mercer's knowledge and acquiescence constituted a delivery to and acceptance by it. The goods were then delivered to the defendant "at the place appointed or provided for their reception" and were "ready for immediate transportation". The delay was occasioned solely to accommodate defendant's convenience. The shipment was lost because the trailer was stolen and by no stretch of the imagination may it be said that under these circumstances Koenig or plaintiff was under any obligation to protect the trailer.